UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-22209-CIV-KING

OSVALDO LOPEZ,

    Plaintiff,

vs.

TRIANGLE FIRE, INC., RAQUEL CANO,
and ORLANDO ALFONSO,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendants TRIANGLE FIRE, INC., RAQUEL CANO, and ORLANDO ALFONSO's Renewed Motion for Summary Judgment (DE 56), filed with leave of Court.[1] The Court has additionally considered Plaintiff's Response in Opposition to the Motion (DE 57).

## I. INTRODUCTION

Through the instant motion, Defendants seek to establish the applicability of the "retail or service establishment" exemption of the Fair Labor Standards Act ("FLSA") to Plaintiff's FLSA claim and to be awarded summary judgment on that basis. Plaintiff opposes

---

[1] During the Pretrial Conference in this matter, the Court noted that it seemed Defendants may be entitled to claim exemption from the requirements of the Fair Labor Standards Act, but that Defendants had failed to meet their burden of clearly and affirmatively establishing through record evidence that the exemption was applicable. The Court then granted Defendants' request for an opportunity to supplement the record and to establish their entitlement to the exemption. The Court construes the instant motion as a renewed motion for summary judgment, Defendants' styling of the motion as a "Supplemental Memorandum" notwithstanding.

1

the motion, arguing the undisputed facts fail to show by clear and affirmative evidence that Defendant is entitled to claim the exemption.

## II. FACTUAL BACKGROUND

The following material facts are undisputed:

Triangle Fire is a Florida corporation headquartered in Miami-Dade County, Florida. Triangle Fire is in the business of servicing and inspecting commercial fire suppression systems and fire extinguishers, primarily at customers' business locations. Raquel Cano and Orlando Alfonso are corporate officers of, and exercised operational control over the activities of, Triangle Fire. At all times material to the above-styled action, Osvaldo Lopez was a service technician working for Triangle Fire on a commission basis. Lopez's job duties included inspecting fire suppression systems and inspecting and servicing fire extinguishers.

Triangle Fire sells fire extinguishers to the general public and to businesses from its brick-and-mortar location in Miami-Dade County, in-person at customers' places of business, and over the internet through its website. Triangle fire also sells "kitchen hood [fire suppression] systems" and "computer room [fire suppression] systems" to both businesses and homeowners. Triangle Fire also services fire extinguishers and fire suppression systems, although it does not do so pursuant to maintenance contracts. It is undisputed that over seventy-five percent of the goods and services Triangle Fire sells are not for resale.

Triangle Fire sells the following fire extinguishers:

1) "ABC or Multi-Purpose extinguishers" which "utilize a specially fluidized and siliconized mono ammonium phosphate dry chemical" to "chemically insulate[] Class A fires by melting at approximately 350°F and coat[] surfaces to which it is applied"

2

and can also "smother[] and break[] the chain reaction of Class B fires . . . ." DE 56-2 at 5–6.

2) Carbon Dioxide extinguishers which "discharge[ carbon dioxide] as a white cloud of 'snow' which smothers a fire by eliminating its oxygen" and is "effective for Class B flammable liquid fires and is electrically non-conducive." *Id.* at 9.

3) "Clean Agent Fire Extinguishers [which] are intended for the protection of facilities traditionally protected by Halon 1211 . . . [such as] Computer Centers, Data/Document Storage Areas, Communications Facilities, Control Rooms, Electronics Manufacturing, Museums, Art Galleries, Historical Collections, [and] Laboratories." *Id.* at 12–13.

4) "Wet Chemical Fire Extinguishers [which] are the best for common restaurant & kitchen fire hazards [and] contain a special potassium acetate based, low PH agent developed for use in pre-engineered restaurant kitchen systems." *Id.* at 16.

5) Class D fire extinguishers for use on high-temperature chemical fires often caused by combustible metals. *Id.* at 19.

The "kitchen hood systems" Triangle Fire sells involve multiple complex components which are presumably installed and permanently affixed in customers' businesses or homes. *See* DE 56-6 (diagram of hood system). The systems may include two three-gallon tanks of a fire suppression agent and complex piping systems to deliver the agent. *See Id.*

### III. LEGAL STANDARD ON SUMMARY JUDGMENT

"Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fat and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

3

Fed. R. Civ. P. 56(a). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy[,] and inexpensive determination of every action." *Pace v. Capobianco*, 283 F.3d 1275, 1284 (11th Cir. 2002). Summary judgment is appropriate unless there is a genuine issue of fact for trial. *Agee v. Porter*, 216 F. App'x 837, 840 (11th Cir. 2007). "For factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). In opposing a motion for summary judgment, the nonmoving party "must show specific facts to support that there is a genuine dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party may not rely on the pleadings, but rather must demonstrate a genuine issue for trial through affidavits, depositions, interrogatory answers, and admissions. *Celotex*, 477 U.S. 323-24. The existence of a "mere scintilla" of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the finder of fact could reasonably find for the moving party. *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 840-41 (11th Cir. 2014) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

## IV. APPLICABLE LEGAL STANDARD FOR FLSA EXEMPTIONS

Unless an employee falls within one of the FLSA's enumerated exemptions, employers must pay employees one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1). However, the exemptions are numerous and varied. *See generally* 29 U.S.C. §§ 207 & 213. Additionally, the old Fifth Circuit Court of Appeals observed,

> [i]f there is any unifying principle underlying the exemptions in the FLSA, it is not evident in the Act's words or its legislative history. Reading the Act's legislative history and its exemptions leads one to conclude that the

4

> exemptions were created simply to ensure the Act's passage. Without the exemptions, the Act's opponents may have prevailed. *See* 107 Cong. Rec. 7102-5 (1961) (Remarks of Senators Holland and Dirksen); Comment, Scope of Coverage Under the Fair Labor Standards Act of 1938, 30 Wash. & Lee L. Rev. 149, 156 (1973). The absence of a unifying principle makes the exemptions' interpretation a difficult task.
>
> The ground rules for interpreting and applying FLSA exemptions disfavor the employer. The Supreme Court has said: To extend an exemption to those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and frustrate the announced will of the people.

*Brennan v. Tex. City Dike & Marina, Inc.*, 492 F.3d 1115, 1117 (5th Cir. 1974) (Thornberry, J.) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). For this reason, the burden of proving the applicability of an exemption lies with the employer, who must show by "clear and affirmative evidence" that the employee is exempt from the FLSA. *See Birdwell v. City of Gadsden, Ala.*, 907 F. 2d 802, 805 (11th Cir. 1992). Furthermore, courts must narrowly construe FLSA exemptions against the employer. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

## V. LAW APPLICABLE TO "EMPLOYMENT BY RETAIL OR SERVICES ESTABLISHMENT" EXEMPTION TO FLSA

The retail or service establishment exemption contains three elements. *See* 29 U.S.C. § 207(i). To claim the exemption the employer must be a "retail or service establishment," the employee's regular rate of pay must be in excess of one and one-half times the federal minimum wage, and the employee must receive more than half of his compensation from commissions on goods or services. *Id.*

While the definition of a "retail or service establishment" is not defined in § 207(i), courts across the country have continued to apply a long-since repealed definition previously

5

codified at 29 U.S.C. § 213(a)(2).[2] *See e.g., Reich v. Delcorp, Inc.* 3 F.3d 1181, 1183 (8th Cir. 1993) ("Absent specific congressional intent, we will not conclude that Congress retained the term 'retail or service establishment' in § 207(i) yet at the same time discarded thirty years of established meaning."). The repealed statute defined a retail or service establishment as an establishment "75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and recognized as retail sales or services in the particular industry." 29 U.S.C. §213(a)(2) (repealed, *see supra* n. 3).

In the seminal case of *Idaho Sheet Metal Works v. Wirtz*, 383 U.S. 190 (1966), the Supreme Court considered two consolidated cases on appeal, rejected the "industry-usage" test to determine whether a given transaction is "retail," instructed that "the typical retail transaction is one involving goods and services that are frequently acquired for family or personal use[,]" and held that businesses are "characterized by [their] sales and no more than 25% of the dollar volume may derive from sales designated nonretail without loss of the exemption." *Id.* at 202–06.

In considering the first of the two consolidated cases, the Court held that sales of bulk potato processing equipment which "plainly appear[ed] to have no private or noncommercial utility" were not retail sales. *Id.* at 206. As the sales of the potato processing equipment accounted for eighty-three percent of the employer's revenues, the Court concluded the employer could not claim the retail or service establishment exemption. *Id.* In considering the second case, which involved sales of truck tires, some of which the Court concluded were retail while others were nonretail, the Court held that

---

[2] Section 213(a)(2) was repealed by Pub. L. No. 101-157, § 3(c)(1), 103 Stat. 939 (1989).

the employer failed to meet its burden of proving the applicability of the exemption due to "unclarity as to the precise percentages of dollar volume attributable to the various sales that the guidelines label nonretail." *Id.* at 209.

## VI. DISCUSSION

Defendants' argument for the applicability of the exemption to the instant case is invitingly straightforward: Defendants sell goods and services to the general public and businesses, over ninety-five percent of the goods and services Defendants sell are not wholesale and not for resale, therefore over ninety-five percent of Defendants' sales are "retail" and Defendants are entitled to claim the exemption. Defendants even include Black's Law Dictionary's definition of the word "retail" to bolster their argument.[3] For his part, Plaintiff argues the exemption does not apply because Defendants undisputedly make a vast majority of their sales to businesses, Defendants' business is very similar to other businesses which the Department of Labor identified as lacking a "retail concept," and certain products Defendants sell have little or no use in non-commercial environments. The Court's review of the caselaw pertaining to FLSA exemptions generally makes two things abundantly clear: 1) determining the applicability of certain FLSA exemptions is hardly straightforward, and 2) the dictionary definition of "retail" has little to do with whether the law considers a business' transactions to be retail transactions.[4]

While it is undisputed that Defendants can and do sell both fire extinguishers and more complex fire suppression systems to individuals and businesses, the record does not

---

[3] "A sale for final consumption in contrast to a sale for further sale or process (i.e., wholesale). A sale to the ultimate consumer." DE 56 at 3.
[4] To wit, the Supreme Court never turned to the dictionary to inform its analysis in the *Idaho Sheet Metal* case.

7

show what portion of Defendants' overall revenues is derived from sales of each class of product (nor does the record show what portion of revenues is derived from sales to individuals and what portion is derived from sales to businesses). This failure to develop the record is particularly damaging to Defendants' position on the applicability of the exemption because certain categories of products Defendants sell appear to have no private or noncommercial uses (notwithstanding the fact that Defendants may sell those same products to the rare individual or homeowner). For example, Defendants' sell commercial-grade "kitchen hood systems" which require permanent installation and rely on complex piping systems to deliver chemical agents from two three-gallon containers. *See* DE 56-6.

Additionally, Defendants sell certain types of fire extinguishers which also appear to have no private or noncommercial uses. *See* DE 56-2. For example, Defendants sell "Clean Agent Fire Extinguishers [which] are intended for the protection of facilities traditionally protected by Halon 1211 . . . [such as] Computer Centers, Data/Document Storage Areas, Communications Facilities, Control Rooms, Electronics Manufacturing, Museums, Art Galleries, Historical Collections, [and] Laboratories[,]" as well as "Class D" fire extinguishers for use on high-temperature chemical fires often caused by combustible metals *Id.* at 12–13, 19. As the kitchen hood system and these two fire extinguisher products would appear to have no private or noncommercial uses, the undersigned concludes that sales of these products do not qualify as retail sales. *See Idaho Sheet Metal Works, Inc.*, 383 U.S. at 206 (holding sales of products which "appear[] to have no private or noncommercial utility" could not be labeled retail irrespective of the terms of sale).

The analysis in the *Idaho Sheet Metal* case makes it clear that a business with variegated sales (i.e., retail and non-retail sales) must establish "precise percentages of dollar

8

volume attributable to the various sales" to meet its burden of showing entitlement to the exemption. *Id.* at 205–09. Such is the case because "a business is characterized by its sales and no more than 25% of the dollar volume may derive from sales designated nonretail without loss of the exemption." *Id.* at 205. With that requirement in mind, the undersigned concludes that Defendants have failed to meet their burden of proving the applicability of the exemption because the record does not establish precise percentages of dollar volume attributable to sales which could properly be designated as retail sales.

## VII. CONCLUSION

Therefore, it is **ORDERED, ADJUDGED, and DECREED** that Defendants' Renewed Motion for Summary Judgment **(DE 56)** be and the same is, hereby **DENIED**.

It is further **ORDERED** and **ADJUDGED** that the parties shall **FILE** updated proposed jury instructions and voir dire questions on or before May 29, 2017.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 23rd day of May, 2017.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:   **All counsel of record**